UNITED STATES DISTRICT COUT
WESTERN DISTRICT OF NEW YORK
_____

JOSEPH C.,[1]
                                          Plaintiff                    DECISION and ORDER
-vs-
                                                                       1:23-CV-00917-CJS
COMMISSIONER OF SOCIAL
SECURITY,
                                          Defendant.
_____


INTRODUCTION

        This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("Commissioner" or "Defendant")

which denied the application of Plaintiff for Social Security Disability Insurance ("SSDI")

benefits.   Plaintiff maintains that such determination is affected by errors of law and not

supported by substantial evidence, and, more specifically, that remand is required

because the Administrative Law Judge ("ALJ") who denied his claim failed to develop the

record; failed to consider the combined effect of his impairments; and failed to consider

the effect of his neuropathy on his ability to perform his past work. Now before the Court

is Plaintiff's motion (ECF No. 6) for judgment on the pleadings and Defendant's cross-

motion (ECF No. 7) for the same relief. For reasons discussed below, Plaintiff's

application is denied, Defendant's application is granted, and this action is dismissed.

_____

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective
immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in
the United States District Court for the Western District of New York, any non-government party will be
identified and referenced solely by first name and last initial."

STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step sequential evaluation process:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920.   First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment[2] which significantly limits his physical or mental ability to do basic work activities.[3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment].   Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[4] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.   The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.[5]

---

[2] "At step two, the ALJ must determine whether the claimant has a 'severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe and meets the duration requirement.' *Id*. If not, the claimant is deemed not disabled, and the inquiry ends." *Koch v. Colvin*, 570 F. App'x 99, 101 (2d Cir. 2014); *see also*, 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.").

[3] The Commissioner's Regulations define basic work-related activities as follows: "Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include— (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting."   20 C.F.R. § 404.1522 (West 2023).

[4] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

[5] "The Commissioner's burden at step five is to show the existence of possible employment for an individual with the RFC determined by the ALJ in the fourth step of the sequential analysis." *Smith v. Berryhill*, 740 F. App'x 721, 726–27 (2d Cir. 2018) (citation omitted). The ALJ typically does this either by resorting to the medical vocational "grids" or, where the claimant has a non-exertional impairment, by taking testimony from a vocational expert [("VE")]. *See, Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986)

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.   In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).   Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d

---

("[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.").

Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)"]. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773.  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id*.

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted); *see also, Snyder v. Comm'r of Soc. Sec*., No. 22-277-CV, 2023 WL 1943108, at *1 (2d Cir. Feb. 13, 2023) ("While the substantial evidence standard requires we find more than a mere scintilla of support for the Commissioner's decision, it is still a very deferential standard of review requiring us to uphold the Commissioner's findings unless a reasonable factfinder would *have to conclude*

4

*otherwise*.") (emphasis in original; citations and internal quotation marks omitted); *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022) ("We may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence'— that is, if no reasonable factfinder could have reached the same conclusion as the ALJ.").

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).   "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).   "In other words, this Court must afford the Commissioner's determination considerable deference, and 'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'" *Melia v. Colvin*, No. 1:14-CV-00226 MAD, 2015 WL 4041742, at *2 (N.D.N.Y. July 1, 2015) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984)).

Also, when considering whether a particular finding or decision is supported by substantial evidence, a court may not rely on any *post hoc* rationalizations offered by the

Commissioner, but it may consider evidence that was evidently considered by the ALJ even if it was not expressly mentioned in the administrative decision. *See, Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability. *E.g., Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982). In *Berry*, we noted that, although we would remand for further findings or a clearer explanation where we could not fathom the ALJ's rationale "in relation to evidence in the record," we would not remand where "we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Id*. *See also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir.1981) ("Notwithstanding the apparent inconsistency between the reports of [two doctors], we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony ...."))."; *see also*, *Loni S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *19 (N.D.N.Y. June 27, 2023) ("The Court is required to look at the entire ALJ's decision when reviewing for substantial evidence. *See John L. M. v. Kijakazi*, No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022) (citations omitted) ('[W]hile a reviewing court may not affirm the Commissioner's decision based on an impermissible *post-hoc* rationalization, it may affirm where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole.').").

FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the factual and procedural history of this action, which is set forth in the parties' papers.   The Court will refer to the record only as necessary to rule on the alleged errors identified by Plaintiff.

Plaintiff worked as a police officer for 26 years, before retiring in April, 2017. Tr. 362.   After retiring from the police force, Plaintiff worked as a self-employed owner/manager of commercial properties, in which his duties involved inspecting boarded-up commercial properties for signs of break-ins. Tr. 54, 362.   In June 2020, Plaintiff was receiving medical treatment for other conditions [6] when his doctors discovered that he had lymphoma. Tr. 45.   Plaintiff subsequently received three chemotherapy treatments for lymphoma, which, he maintains, suppressed his immune system and led to a worsening of a preexisting diverticulitis condition, which led to a resection surgery of his sigmoid colon. Tr. 45.   Both the chemotherapy and the colon surgery were successful, and Plaintiff's lymphoma has been in remission ever since. Although, Plaintiff claims to have developed neuropathy in his hands and feet from the chemotherapy. Tr. 47.

In early 2021, Plaintiff contracted Covid-19, which resulted in four stays in the hospital over a sixteen-week period. Tr. 45-46.   Plaintiff recovered from Covid-19 but maintains that he has residual "brain fog" and shortness of breath. Tr. 46-47.

Plaintiff further claims that he has experienced anxiety, depression, and post-traumatic stress disorder ("PTSD") as a result of experiencing decreased ability to

---

[6] Apparently pancreatitis and diabetic cellulitis. Tr. 1167.

function. Tr. 75.

On May 3, 2021, Plaintiff applied for SSDI benefits, claiming that he became disabled as of June 3, 2020, due to "non hodgkin d cell lymphoma stage 4 cancer" and "auto immune disease." Tr. 361.

On September 23, 2021, at the Commissioner's request, Plaintiff underwent a consultative Internal Medicine Examination by Hongbiao Liu, M.D. ("Liu"). Tr. 1167-1170. Plaintiff reportedly told Liu that his lymphoma was in remission, and that his Covid-19 had resolved with treatment, and that he "currently [had] no complaints" related to Covid-19. Tr. 1167.   Upon examination Liu reported that Plaintiff appeared to be in no distress, had a normal gait, and could walk on heels and toes without difficulty, squat fully, and rise from his chair and get on and off the examining table without difficulty. Tr. 1168.   Liu reported a normal musculoskeletal exam; normal neurologic exam with full strength in upper and lower extremities; and normal, intact hand and finger dexterity with full grip strength. Tr. 1169.   Liu's diagnoses were: "History of non-Hodgkin's lymphoma in remission," "history of Covid-19 pneumonia, recovered," "history of high blood pressure," "obesity," and "history of anxiety." Tr. 1170.   Liu opined that Plaintiff had "no limitations for physical activities." Tr. 1170.

Also on September 23, 2021, Plaintiff underwent a consultative psychiatric examination by Janine Ippolito, Psy.D. ("Ippolito"). Tr. 1163-1166.   Plaintiff reportedly told Ippolito that he was currently unable to work "due to physical effects of ongoing cancer treatment." Tr. 1163.[7]   Plaintiff indicated that he was taking Cymbalta for anxiety,

---

[7] The Court observes that insofar as Plaintiff told Ippolito that he was having "ongoing" chemotherapy,

related to his cancer diagnosis. Tr. 1163.   In that regard, Ippolito stated, in pertinent part:

> The claimant denied any problems with depression.  . . .  The claimant
> reports that he has been experiencing problems with anxiety since he first
> received his cancer diagnosis.   He reports worrying, nervousness, fatigue,
> irritability, difficulty sleeping, restlessness and physical tension.   Anxiety
> triggers: None reported.   Trauma: None reported.   Panic attacks: Non
> reported.   Manic symptomology:   None reported.   Thought disorder
> symptoms: None reported.   Cognitive symptomology:   The claimant
> reports that he has been experiencing short-term memory problems and
> difficulty concentrating.   He suspects this may be related to ongoing
> chemotherapy treatment and a history of Covid infection.

Tr. 1164.   Upon examination and testing, Ippolito reported normal thought processes, full

affect, "okay" mood, intact attention and concentration, average cognitive functioning,

good insight, and good judgment. Tr. 1164-1165. The only abnormal finding reported was

"mildly impaired" recent and remote memory skills, about which Ippolito remarked: "Mildly

impaired due to some distractibility." Tr. 1164.   Regarding Plaintiff's self-reported

activities, Ippolito wrote:

> He reports that his is able to do cooking, cleaning, laundry, grocery,
> shopping, showering, bathing and dressing independently.   The claimant
> manages his own money, and he drives.   He currently does not use public
> transportation.   Socialization:   He has friends that he interacts with
> regularly.   Family relationships:   He keeps in touch with his parents,
> siblings, aunts, cousins.   Hobbies and interests include riding his
> motorcycle and golfing.   He spends a typical day doing household chores,
> running errands and helping take care of his mother.

Tr. 1165.   Ippolito's diagnosis was "adjustment disorder with anxiety, mild." Tr. 1165.

Ippolito opined that Plaintiff had no limitations with regard to work-related mental

---

such statement would have been inaccurate, since Plaintiff's treating doctor indicated that Plaintiff's
chemotherapy treatments were completed by December 2020. Tr. 2989.

functioning, except "mild" limitation regulating emotion, controlling behavior, and maintaining well-being, "due to his anxiety symptoms." Tr. 1165.

On December 1, 2021, the Commissioner denied Plaintiff's claim initially.  The Commissioner found that Plaintiff had one severe impairment, lymphoma, and four non-severe impairments consisting of gastrointestinal system, hypertension, anxiety, and "substance addiction disorders (alcohol)." Tr. 198.  Examiner L. Dekeon Ph.D. ("Dekeon") noted that Plaintiff had reported having problems with understanding, following instructions, memory, and concentration, all due to "poor processing" and "foggy head" resulting from "treatments for physical condition." Tr. 199.  However, Dekeon determined that Plaintiff's mental impairments were "not severe." Tr. 199.  As far as physical functioning, examiner C. Krist, D.O. ("Krist") opined that Plaintiff had the RFC to frequently lift and carry 50 pounds; sit, stand and/or walk, each for about six hours in an 8-hour workday; and push, pull, and operate hand controls and foot controls without limitation. Tr. 201-202.  Krist further noted that Plaintiff had no manipulative or postural limitations. Tr. 202.  On February 1, 2022, the Commissioner similarly denied the claim upon reconsideration. Tr. 219-227.

On March 6, 2023, Yahya Hashmi, M.D. ("Hashmi"), Plaintiff's primary physician, completed an assessment. Tr. 2988-2989.  Hashmi indicated that in 2020, Plaintiff had been diagnosed with B cell follicular nodule lymphoma, for which he was successfully treated with chemotherapy and "colon resection" surgery. Tr. 2988.  Hashmi indicated that Plaintiff's last chemotherapy treatment had been in December 2020, and that his side-effects from such treatment were shortness of breath and neuropathy. Tr. 2989.

When asked to state whether Plaintiff had any significant emotional difficulty relating to his cancer diagnosis and treatment, Hashmi wrote: "depression/PTSD seeing therapist." Tr. 2989.   Hashmi was asked to state how many hours, between "none" and "8 hours," Plaintiff could work per day, but Hashmi left that question blank. Tr. 2989.   Hashmi indicated, though, that Plaintiff could stand for fifteen minutes at a time, sit for thirty minutes, lift ten pounds frequently. Tr. 2989.   When asked whether he had any additional comment concerning Plaintiff's ability to work, Hashmi wrote: "Continues to have SOB [shortness of breath] with exertion, memory has been affected and general joint pain and neuropathy.   Follow up with hemotologist and pulmonary doctor." Tr. 2989.

Hashmi's functional report did not indicate when he had last examined Plaintiff. However, Plaintiff's last reported office visit with Hashmi had been on May 17, 2022, Tr. 2539-2544, and Hashmi's notes from that office visit indicate that, as far as mental health symptoms, Plaintiff had denied any symptoms of depression and had a normal mood and affect. Tr. 2539, 2541.   Hashmi noted, rather, that Plaintiff's *past* medical history included a single episode of major depression, for which Hashmi did not reference any ongoing treatment or medication. Tr. 2540, 2541.   Upon physical examination, Hashmi reported normal findings, including that Plaintiff appeared healthy, walked with a normal gait, and had full range-of-motion and strength in his upper and lower extremities. Tr. 2541. Hashmi's treatment note contains no mention of neuropathy.   On the other hand, Hashmi noted that Plaintiff had hyperlipidemia, for which Hashmi recommended that Plaintiff "exercise at least 3 days a week for 30 minutes." Tr. 2541.

On March 13, 2023, a telephonic hearing was held before an ALJ, at which Plaintiff,

11

accompanied by his attorney, and a VE testified.   At the start of the hearing, Plaintiff's attorney represented to the ALJ that the record was complete.   More specifically, the following exchange concerning the record took place between the ALJ and Plaintiff's attorney:

> ALJ: Mr. Gaughan, have you had an opportunity to review the file?
>
> ATTY: Yes, I have.
>
> ALJ: Do you have any objections to any of those documents?
>
> ATTY:   No, I do not, Your Honor.
>
> ALJ:   And is there any additional evidence outstanding at this time?
>
> ATTY:   No, it appears at this time the record is as complete as it can be.

Tr. 43.

On March 23, 2023, the ALJ issued a written decision finding that Plaintiff was not disabled at any time between the alleged onset date and the date of his decision. Tr. 18-33. Tr. 18-33.   In pertinent part, the ALJ found that Plaintiff had a severe impairment consisting of "degenerative disc disease of the lumbar spine" and non-severe impairments consisting of "Covid 19 sequelae including shortness of breath and brain fog, B-cell lymphoma, acute alcoholic pancreatitis, diverticulitis with status post partial colectomy, headaches, hypertension, neuropathy, obesity, left knee problems, fibromyalgia, adjustment disorder with anxiety, depression, posttraumatic stress disorder, and alcohol use condition in remission," but that Plaintiff nevertheless had the RFC to perform light work, except that he could only frequently climb ramps and stairs,

occasionally climb ladders, ropes, or scaffolds, and frequently balance, stoop, kneel, crouch, and crawl. Tr. 25-31.   The ALJ further found that with such RFC, Plaintiff could perform his past work as a police captain and police lieutenant, and was therefore not disabled.

Plaintiff appealed to the Appeals Council, but the Council declined to review the ALJ's determination. Tr.   In that regard, on April 13, 2023, Plaintiff's counsel sent a generic 2-page form appeal to the Appeals Council, that did not allege any particular error, but only asserted that the ALJ's decision "was improperly evaluated and not supported by substantial evidence." Tr. 426.   Plaintiff also submitted 114 pages of medical records to the Appeals Council, consisting of 13 pages of records from UBMD Internal Medicine Physician's Group at Conventus for the period March 19, 2021 through March 24, 2023, and 100 pages of records from Buffalo General Hospital for the period February 19, 2021 through February 28, 2021.[8]

Regarding the records submitted to the Appeals Council, the records from UBMD Internal Medicine Group contain a Pulmonary Function Lab report, dated September 2, 2021, that was generally normal, except for moderate volume restriction and mildly reduced diffusing capacity. Tr. 88-89 ("Interpretation: 1. Spirometry is within normal indices.   2. Flow volume loop conforms to normal contours. 3. Post-bronchodilator testing failed to demonstrate a significant change in FVC or FEV1, nevertheless a clinical benefit can occur in the absence of a response to bronchodilator in the laboratory. 4. Lung

---

[8]  Plaintiff's counsel had requested the records from the providers a week prior to the hearing, but never mentioned the requests or the records to the ALJ. Tr. 43, 78, 92.

volumes reveal moderate restriction. 5. Airways resistance is normal. 6. Diffusing capacity is mildly reduced.").   The records from Buffalo General Hospital, meanwhile, pertain to a 9-day hospitalization in February 2021, after Plaintiff had presented to the Emergency Department complaining of shortness of breath. Tr. 103-104.   Plaintiff was diagnosed with "long Covid-19" and treated with remdesivir. Tr. 104 ("Patient remained in the hospital for a prolonged course of remdesivir which was completed on 2/28.   All his questions were answered prior to discharge.   Patient will not be discharged on oxygen.   He feels much better than when he came in.").   Notes from that hospitalization indicate that Plaintiff denied symptoms of anxiety or depression. Tr. 109.   The Appeals Council determined that such evidence would not have affected the ALJ's determination.

On September 1, 2023, Plaintiff commenced the subject action.   On December 6, 2023, Plaintiff filed the subject motion for judgment on the pleadings, ECF No. 6.   As discussed further below, Plaintiff contends that remand is required because the ALJ variously failed to develop the record by making "no attempt to obtain [Plaintiff's] mental health treatment records or his recent test results," failed to "adequately consider" the combined effect of Plaintiff's severe and non-severe impairments, and failed to "address how" Plaintiff's neuropathy would affect his ability to perform his past work as a police officer.

The Commissioner opposes Plaintiff's motion and has cross-moved for judgment on the pleadings, as discussed more fully below.

The Court has considered the parties' submissions, including Plaintiff's reply, and the relevant portions of administrative record.

DISCUSSION

<u>The ALJ's Alleged Failure to Develop the Record</u>

"The threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018).   Accordingly, the Court first considers Plaintiff's contention that the ALJ failed to develop the record. *See, Lopez v. Comm'r of Soc. Sec.*, 622 F. App'x 59, 60 (2d Cir. 2015) ("Before assessing whether the ALJ's determination was supported by substantial evidence, we must first be satisfied that the claimant has had a full hearing.   Whether dealing with a *pro se* claimant or one represented by counsel, the ALJ must develop the claimant's complete medical history.") (citations and internal quotation marks omitted).

As noted earlier, at the hearing, Plaintiff's attorney told the ALJ that the record was "as complete as it can be." Tr. 43.   Nevertheless, Plaintiff, still represented by the same legal team,[9] now contends that the ALJ should have disregarded counsel's assertion and developed the record anyway, since Plaintiff's hearing testimony put the ALJ on notice that there were missing records.   In this regard, Plaintiff points to two sections of his testimony.   First, he testified in pertinent part:

> ATTY: Are they still exploring the fatigue you are feeling as the result of the bowel and the [inaudible] infection?
>
> CLMT:   [Y]es, they are still exploring Just Thursday I saw a pulmonologist who wants to have a couple of other studies and exams done, one being an echocardiogram of my heart.   He said it's a possibility that throughout all the Covid and the symptoms of Covid, that I have suffered some enlargement of the heart which would then prevent, you know, blood flow

---

[9]  *See, e.g.*, Tr. 426-427.

to the lungs.   And that could be the problem that I'm having with the shortness of breath because it has gotten worse over the last six months.

Tr. 62.   Second, Plaintiff later testified, not in response to a question, in pertinent part:

> CMT: The mental distress – I am in therapy, two different therapists.   One is secular, one Christian-based.   For post-traumatic stress disorder, depression, never really had – the fact that I can't be and do the things I used to do has really weighed upon me psychologically.   So, I would just say that.

Tr. 75.

According to Plaintiff, his testimony on these points triggered a duty by the ALJ to develop the record and obtain whatever records might exist.   Specifically, in support of his motion for judgment on the pleadings, Plaintiff states:

> Here, Plaintiff's testimony indicated that there was a gap in the record. Specifically, Plaintiff testified that he had just seen a pulmonologist who wanted to have some studies done to explore the cause(s) of his continued fatigue. T. 62. Plaintiff also testified that he was currently seeing two therapists for PTSD and depression. T. 75. Despite this testimony, the ALJ made no attempt whatsoever to obtain the updated records from Plaintiff's pulmonologist or his mental health providers. This was error. *Rosa v. Callahan*, 163 F.3d at 80. Accordingly, remand for proper development of the record is warranted.

ECF No. 6-1 at p. 18.

Defendant disagrees and points out, first, that Plaintiff did not identify any mental health treatment records at least five days prior to the hearing, as required 20 CFR § 404.935(a), and that none of the exceptions to the five-day rule apply.   Indeed, Defendant points out that, as already noted by the Court, Plaintiff's counsel told the ALJ that the record was complete.   Alternatively, Defendant maintains that the ALJ had no

duty to develop the record further, since there was no gap in the record, which already contained sufficient evidence to allow for a disability determination.   On this point, Defendant states, in pertinent part:

> Here, the record contained sufficient evidence for the ALJ to assess Plaintiff's claim, including treatment notes from Plaintiff's other medical providers containing Plaintiff's denials of mental symptoms, a report and opinion from an examining psychologist, the findings of two State agency psychological consultants, and Plaintiff's statements regarding his mental health symptoms and daily activities. Tr. 198-99, 218-19, 368-78, 1163-66. Plaintiff has not shown why the evidence in the record was insufficient for assessing his mental functioning and has therefore failed to establish that the absence of the treatment notes from his therapist(s) constitutes a gap warranting remand.
>
> Similarly, Plaintiff has not met his burden of proving that remand is warranted to request more recent records from a pulmonologist. [Plaintiff's Brief at p.] 19. Plaintiff specifically cites his March 2023 testimony that he had just seen a pulmonologist who wanted to have some studies done to explore the causes of his continued fatigue, and argues that remand is warranted for the ALJ to obtain these records. [Plaintiff's Brief at p.] 19 referring to Tr. 62.   However, Plaintiff merely testified that the pulmonologist wanted to perform additional tests. Tr. 62. Plaintiff has not introduced evidence that these tests were actually performed during the period at issue in the case.

ECF Nol. 7-1 at p. 18 (footnote omitted, observing that Plaintiff also never submitted any updated pulmonary function tests to the Appeals Council).

The Court finds that the ALJ did not err in failing to develop the record. Preliminarily, the law concerning the ALJ's general duty in general to develop the record is clear:

> "[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant

is represented by counsel or by a paralegal." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (alterations and internal quotation marks omitted). The ALJ's duty to develop the record reflects "the essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (internal quotation marks omitted).

*** 

However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 F.3d at 79 n.5 (internal quotation marks omitted). An ALJ's failure to develop the record warrants remand. *See id*. at 79–80.

*Rivers v. Kijakazi*, No. 21-1935-CV, 2023 WL 2485467, at *1 (2d Cir. Mar. 14, 2023).

Here, Plaintiff's argument concerning the ALJ's alleged error in failing to obtain missing pulmonary records is unpersuasive.   To begin with, it seems clear that as of the date of the hearing, no such new testing, to establish a possible link between an enlarged heart and breathing problems, had been performed, and therefore no such test results existed.[10]   Consequently, there were no such testing records for the ALJ to obtain. Therefore, the alleged failure by the ALJ was, at most, the failure to obtain a single office treatment note which, at best, according to Plaintiff's testimony, contained a statement by a pulmonologist that additional testing might be helpful. Plaintiff has not shown that the absence of such a note amounts to "an obvious gap in the record" within the meaning of Second Circuit case authority. *See, e.g., Morris v. Berryhill*, 721 F. App'x at 28 ("[In *Lopez*

---

[10]  *See, Morris v. Berryhill*, 721 F. App'x at 28 (In rejecting a claim that an ALJ failed to develop the record, the Circuit Court stated: "As the Government points out, there is no evidence that the alleged appointments were held or that the corresponding records exist. And Morris has no information about their contents.").   Nor is there any indication that Plaintiff ever subsequently had such tests, since, for example, he never submitted any such test results to the Appeals Council.

*v.Comm'r of Soc. Security*, 622 Fed.Appx. at 61], [t]he court concluded that the absence of the hospital stay [records] "creat[ed] an obvious gap in the record" and remanded for the ALJ to further develop the record. But an overnight hospital stay is likely to be a serious and critical medical event that could materially change the weight of the evidence on the disability determination; the potentially missing records here would consist of routine check-up and progress notes, with no indication that they contain significant information. It is not even clear that any records are actually missing.").

Moreover, the alleged statement attributed to the pulmonologist appears entirely speculative and/or misinformed on its face, since it suggests that Plaintiff's breathing problems might be the result of an enlarged heart, when the evidence of record is to the contrary.   That is, the actual record indicates that Plaintiff had shortness of breath related to an acute Covid-19 infection, from which he recovered within six months, and that he does not have an enlarged heart.   Indeed, as noted earlier, the post-Covid pulmonary testing performed in September 2021 showed no major problem with Plaintiff's breathing. Moreover, CT testing performed in October 2022, shortly before the hearing, specifically ruled out an enlarged heart. Tr. 2522 (CT scan results of chest: "Cardiovascular: Normal heart size without pericardial effusion."); *see also*, Tr. 2582 (CT scan of heart performed on July 1, 2020, also showed normal heart size: "The heart is normal in size.").

Additionally, Plaintiff's assertion that his breathing difficulties had worsened during the six months prior to the hearing is also inconsistent with the contemporaneous medical evidence, since office notes from November 2022 and December 2022 report that Plaintiff denied any breathing difficulty. *See*, Tr. 2532 (Office note from November 9, 2022:

"Respiratory – denies any cough, difficulty breathing"); *see also*, Tr. 2815 (Patient questionnaire from office note from December 13, 2022: "Trouble breathing, cough: No."). In short, Plaintiff's testimony concerning his pulmonologist's alleged remark about the possibility of performing additional testing does not establish that there was an obvious gap in the record.

Similarly, Plaintiff's testimony that he was "in therapy" with two therapists in response to feeling bad about not being able to perform his usual activities did not trigger a duty to develop the record.   Again, Plaintiff's counsel did not submit any such records to the ALJ as required by 20 CFR § 404.935(a), but, rather, expressly stated that the record was complete.[11]   Besides that, Plaintiff's vague reference to being "in therapy," which he essentially threw in as an afterthought after his attorney had already made his closing argument to the ALJ, Tr. 75, gave no indication, first of all, that he was actually seeing these therapists in person as a patient, as opposed to merely watching materials online,[12] or, second, that such records would contain any useful information concerning his ability to perform the basic mental requirements required to perform work.

Moreover, as Plaintiff's counsel acknowledged at the hearing, the ALJ already had

---

[11]  Nor did Plaintiff's counsel, upon hearing Plaintiff's testimony, request an opportunity to submit additional evidence.   Overall, the Court finds that Plaintiff's counsel's conduct at the hearing logically forestalls the suggestion that there was an "obvious gap" in the record. *See, Gilbert H. v. Saul*, No. 5:20-CV-80 (MAD), 2020 WL 6146596, at *5 (N.D.N.Y. Oct. 20, 2020) ("There is not an obvious gap in the record where a plaintiff and his counsel affirmatively answer that the record is complete at the ALJ hearing.") (collecting cases).

[12]   Plaintiff did not indicate when, where, or how he was "in therapy," though elsewhere in the hearing transcript he referred to listening to materials online. Tr. 53 ("I listen to some Christian talk on the computer every morning.").   The Court finds it odd both that Plaintiff would, shortly before the hearing, suddenly begin actual therapy with two separate therapists when he previously never sought mental health treatment at all, and that Plaintiff's counsel has never proffered the names of the alleged therapists or any records of treatment.

a complete medical history concerning Plaintiff's mental impairments.   In that regard, the ALJ's decision discusses how, in addition to Dr. Ippolito's report, the record is replete with instances of Plaintiff denying any mental health symptoms to his treating doctors, and with evidence that Plaintiff, despite his alleged impairments, performed a wide variety of daily activities including working part time, caring for his elderly parents, socializing with friends, going to the gym, golfing, and riding a motorcycle.   Indeed, the ALJ's decision expressly refers to Plaintiff's hearing testimony about being "in therapy," but goes on to explain how Plaintiff's claims concerning the severity of his alleged depressive symptoms was inconsistent with the record as a whole.

In sum, Plaintiff has not shown that there was an obvious gap in the record concerning his alleged mental impairment. *See, e.g., Hyshaw v. Comm'r of Soc. Sec.*, 797 F. App'x 671, 672 (2d Cir. 2020) ("Hyshaw contends that the ALJ should have ordered additional intelligence testing here because the record was devoid of a valid IQ score or a formal assessment of her cognitive functioning from her teenage years or adulthood. But the record contained valid IQ testing from 2007. Although Hyshaw argues that this test was outdated, a report by a school psychologist in 2011—roughly three years before Hyshaw applied for benefits—noted that Hyshaw's previous evaluation in 2007 continues to represent her cognitive ability.   In addition, both Dr. Ippolito, who conducted a consultative examination of Hyshaw, and Dr. Totin, who reviewed the record evidence, concluded that Hyshaw could perform simple work despite her cognitive limitations. We therefore reject Hyshaw's argument that there were 'obvious gaps' in the record requiring the ALJ to conduct a formal intelligence examination.") (citations to record and internal

quotation marks omitted); *see also, Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015) ("The ALJ in this case based his findings on the psychiatric evaluation of a consultative psychologist who personally examined MLS as well as MLS's complete medical history and treatment notes, which themselves contained multiple psychological assessments of MLS.  . . .  Given the extensive medical record before the ALJ in this case, we hold that there were no 'obvious gaps' that necessitate remand solely on the ground that the ALJ failed to obtain a formal opinion from one of MLS's treating physicians regarding the extent of MLS's impairments in the functional domain of caring for oneself.").

For these various reasons, the Court finds no merit to Plaintiff's contention that remand is required because the ALJ failed to develop the record.

<u>The ALJ's Alleged Failure to Adequately Consider the Combined
Effects of Plaintiff's Severe- and Non-Severe Impairments</u>

Plaintiff next contends that the ALJ erred by failing to "adequately consider" the combined effect of Plaintiff's severe and non-severe impairments when making the RFC finding, purportedly since the ALJ "fail[ed] to discuss Plaintiff's mental impairments and limitations in the RFC analysis." Pl. Memo of Law, ECF No. 6-1 at p. 1.   On this point, Plaintiff states, in pertinent part:

> Here, the ALJ found that Plaintiff's adjustment disorder with anxiety, depression, posttraumatic stress disorder ("PTSD"), and alcohol use condition in remission were all non-severe. T. 21-24. The ALJ further found that Plaintiff had mild limitation understanding, remembering or applying information, and mild limitation concentrating, persisting or maintaining pace. T. 23-24. However, the ALJ's RFC finding included no mental limitations at all. See T. 25. Moreover, she failed to discuss Plaintiff's mental limitations in the RFC analysis, other than summarizing the medical opinions that addressed them.

*\*\**

> Notably, Dr. Ippolito opined that that Plaintiff had mild limitations in regulating emotions, controlling behavior, and maintaining his well-being due to his anxiety symptoms. T. 1165. The ALJ purported to find this opinion persuasive, but failed to explain how Plaintiff would nonetheless be capable of performing his past relevant work as a police lieutenant and policy captain in spite of those limitations. See T. 29. Indeed, the vocational expert's testimony does not support that conclusion because the vocational expert was not provided with a hypothetical that accounted for a mild limitation in regulating emotions, controlling behavior, and maintaining his well-being.

ECF No. 6-1 at pp. 14-15.

Defendant opposes Plaintiff's argument, contending that the ALJ properly considered Plaintiff's impairments, and that Plaintiff has not shown that the ALJ erred by failing to include specific limitations in the RFC finding to account for Plaintiff's mild, non-severe mental impairments. ECF No. 7-1 at pp. 7-13.

The Court has considered the parties' arguments and finds, first, that there is no merit to Plaintiff's contention that the ALJ failed to properly consider the combined effects of Plaintiff's severe- and non-severe impairments.   The ALJ expressly noted the ALJ's obligation to consider "all of the claimant's impairments, including impairments that are not severe," Tr. 20, and it is evident from the ALJ's decision the ALJ considered all of Plaintiff's impairments, including his non-severe mental impairments, when making the RFC finding. Tr. 29-30, 32 (Additional statements by the ALJ that the ALJ had considered all of Plaintiff's severe- and non-severe impairments).   As discussed further below, it is fallacious for Plaintiff to argue that the absence of additional limitations in the RFC finding to account for his mild mental limitations proves that the ALJ failed to properly consider his non-severe impairments.

The Court further finds that the ALJ did not err by failing to include specific limitations in the RFC to account for Plaintiff's mental impairments.   In that regard, the fact that the ALJ considered Plaintiff's non-severe mental impairments when making the RFC finding does not mean that the ALJ was required to include particular limitations in the RFC finding to account for such impairments.    Indeed, the Chief Judge of this District, the Hon. Elizabeth Wolford, recently explained why Plaintiff's argument on this point, which Plaintiff's counsel also made in the case that was before her, lacks merit, stating in pertinent part:

> Plaintiff does not argue that ALJ erred in making his severity determination, but contends that he was nonetheless required to incorporate mental limitations into the RFC finding based on mild limitations identified at step two. The Court is unpersuaded by this argument.
>
> In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). "When formulating a claimant's RFC, the ALJ must consider not only her severe impairments, but her non-severe impairments as well." *Novas v. Kijakazi*, No. 22CV1020MKVBCM, 2023 WL 2614362, at *11 (S.D.N.Y. Mar. 8, 2023) (quotation omitted), adopted, 2023 WL 2613550 (S.D.N.Y. Mar. 23, 2023). "This does not mean, however, that the ALJ must include a specific limitation in the RFC corresponding to each of the claimant's non-severe impairments. To the contrary: by definition, an impairment which is not severe does not significantly limit the claimant's physical or mental ability to do basic work activities." *DuBois v. Comm'r of Soc. Sec.*, No. 20-CV-8422 (BCM), 2022 WL 845751, at *5 (S.D.N.Y. Mar. 21, 2022) (quotation and alteration omitted).
>
> As particularly relevant here, "there are no regulations that mild limitations require mental limitations in the RFC." *Jane M. A. v. Comm'r of Soc. Sec.*, No. 19-CV-00808, 2021 WL 63066, at *5 (W.D.N.Y. Jan. 7, 2021). In other words, "while it is true that nonsevere impairments and 'mild' limitations can

cause functional restrictions," an ALJ is not compelled to conclude that they do if such a finding is not supported by the record. *Lynette W. v. Comm'r of Soc. Sec.*, No. 19-CV-1168-FPG, 2021 WL 868625, at *4 (W.D.N.Y. Mar. 9, 2021) (emphasis in original).

*Jacquelyn S. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00064 EAW, 2024 WL 338993, at *3–4 (W.D.N.Y. Jan. 30, 2024) (citation to record omitted); *see also*, *Kendra C. v. Commissioner*, No. 21-CV-1131MWP, 2024 WL 1242413 at *10 (W.D.N.Y. Mar. 22, 2024) ("Although an ALJ must account for limitations caused by both severe and nonsevere impairments in formulating the RFC, if a mental impairment causes only mild limitations that do not result in any functional work-related restrictions, the ALJ does not necessarily err by formulating an RFC without mental limitations or restrictions."))."   In the instant case, Plaintiff has similarly failed to show that the ALJ committed an error of law by failing to include limitations in the RFC finding to account for mild mental impairments.

For the same reasons discussed in the preceding paragraph, there is also no merit to Plaintiff's contention that because the ALJ purported to find persuasive the report by Dr. Ippolito, which indicated that Plaintiff would have mild limitations in regulating emotions, controlling behavior, and maintaining his well-being due to his anxiety symptoms, the ALJ was required to include such limitations in the RFC finding. *See also, Andrew P. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00029 EAW, 2024 WL 798159, at *5 (W.D.N.Y. Feb. 27, 2024) (collecting cases holding that an RFC finding need not contain limitations to account for mild mental impairments).[13]

---

[13] This argument by Plaintiff is also incorrect insofar as it assumes that an ALJ is required to adopt every

Plaintiff also failed to show that the ALJ's RFC finding is unsupported by substantial evidence insofar as it does not include additional limitations related to Plaintiff's mild mental impairments.   That is, Plaintiff has not shown that a reasonable factfinder would have to conclude that additional limitations were required in the RFC finding to account for Plaintiff's mild mental impairments. *See, Cheryl F. v. Comm'r of Soc. Sec.*, No. 1:22-CV-00958-CJS, 2024 WL 1285491, at *10–11 (W.D.N.Y. Mar. 26, 2024) ("[T]he ALJ expressly stated, with regard to her RFC finding, that she was required to "consider all of the claimant's impairments, including impairments that are not severe," and that she had "considered all symptoms." Tr. 25, 31. Plaintiff maintains that those statements are disproven by the ALJ's failure to include additional limitations in the RFC finding, but, again, this amounts to a disagreement with how the ALJ weighed the evidence. Plaintiff has not shown that reasonable factfinder would have to conclude that the RFC finding should have included additional limitations related to her anxiety and depression.").   Accordingly, this aspect of Plaintiff's motion is also denied.

The ALJ's Alleged Failure to Address How Plaintiff's Neuropathy Would Affect His Ability to Perform His Past Work as a Police Lieutenant/Captain

Lastly, Plaintiff contends that the ALJ erred by failing to adequately explain how Plaintiff could perform his past work as a police lieutenant and police captain, since

---

limitation contained within a medical opinion that the ALJ finds to be persuasive. *See, e.g., Christopher P. v. Comm'r of Soc. Sec.*, No. 1:22-CV-00001 (JGW), 2024 WL 3029432, at *3 (W.D.N.Y. June 17, 2024) ("[A]n ALJ is not required to adopt every limitation contained in a medical opinion even where, as here, he finds the opinion overall to be persuasive.").

Plaintiff testified that his neuropathy prevented him from firing a gun. On this point, Plaintiff states, in pertinent part:

> At the hearing, Plaintiff testified that the neuropathy in his hands causes everything to be sore and that he has a lot of joint pain. T. 49. He testified that he feels like he does not have control of his fingers. *Id*. He testified that he drops one or two pills from his medications on the floor every day, and that he has a hard time picking them up with his forefinger and pincher grip. *Id*. Plaintiff testified that he had a lack of dexterity in his hands. *Id*. He testified that he cannot do his own buttons on a shirt, and that he occasionally has an issue tying his boots. T. 50-51.
>
> Plaintiff further testified that has a police captain, he was expected to be able to use a gun on duty. T. 58-59. He testified that he is currently unable to use a gun because of his neuropathy, and that he let his H.R. 218 qualifications expire because he would be unable to shoot a gun accurately enough to qualify. T. 59. Plaintiff also testified that he has trouble typing and using his phone because of his neuropathy. T. 60-61.
>
> The ALJ failed to provide any explanation in her decision as to why she believed that Plaintiff could work as a police lieutenant and police captain despite his inability to accurately fire a gun. See T. 25-31. Indeed, in her decision, the ALJ ignored that particular portion of Plaintiff's testimony altogether. *Id*. This was error.

ECF No. 6-1 at p. 17.

Defendant disagrees and maintains that the ALJ's decision properly considered and rejected Plaintiff's contention that he is unable to use his hands due to neuropathy, pointing out that:

> In assessing Plaintiff's RFC, the ALJ considered Plaintiff's testimony that he had trouble with his fine motor skills and handling objects, and could not pick up items, button small buttons, or tie his shoelaces. Tr. 26 referring to Tr. 48-51. The ALJ then noted, that in contrast to Plaintiff's testimony, consultative examiner Dr. Hongbiao Liu examined Plaintiff in September 2021, and found intact bilateral hand and finger dexterity and full grip

strength. Tr. 28 referring to Tr. 1169. The ALJ further considered that Plaintiff reported performing personal care, driving a car, cooking, cleaning, doing dishes, riding a motorcycle, and golfing, all of which require some ability to grasp, handle, and perform fine manipulations. Tr. 27 referring to Tr. 369-72. Finally, the ALJ noted that the record did not contain much evidence of neuropathy. Tr. 27 ("the record does not reflect neuropathy really in the record."); *see Reynolds v. Colvin*, 570 Fed. App'x 45, 47 (2d Cir. 2014) ("A lack of supporting evidence on a matter where the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits."); *Dumas*, 712 F.2d at 1553 ("[t]he [Commissioner] is entitled to rely not only on what the record says, but also on what it does not say."). Indeed, state agency medical consultants C. Krist, D.O., and G. Ehlert, M.D., reviewed the evidence of record on November 30, 2021 and February 1, 2022, respectively, and concluded that Plaintiff did not have any manipulative limitations. Tr. 202, 223. Accordingly, the ALJ reasonably concluded on the basis of the record that no further restriction of the RFC was warranted to account for Plaintiff's complaints of neuropathy.

Plaintiff cites his own testimony that he was unable to shoot a gun on account of his neuropathy, and was therefore unable to perform his past relevant work as a police captain.3 P. Bf. 17-18 referring to Tr. 58-59. However, Plaintiff only cites his own testimony and points to no medical evidence establishing limitations in gripping, handling, or performing fine hand manipulations. See P. Bf. 16-17. In contrast, the ALJ cited evidence of intact finger dexterity, full grip strength, and activities requiring the performance of fine hand manipulations. Tr. 27-28 referring to Tr. 369-72, 1169. Accordingly, the ALJ's findings are supported by substantial evidence, and Plaintiff has not met his burden of proving that he could not perform the fine hand manipulations required of his past relevant work. See Poupore, 566 F.3d at 306 (Plaintiff bears the burden of proof at steps one through four of the sequential analysis); Sims v. Comm'r of Soc. Sec., No. 17-cv-798-FPG, 2019 WL 421483, at *3 (W.D.N.Y. Feb. 4, 2019) ("The claimant has the burden at step four to show an inability to return to her previous specific job and an inability to perform her past relevant work generally.") (internal citations omitted).

ECF No. 7-1 at pp. 15-16.

For essentially the same reasons relied upon by Defendant, the Court agrees that Plaintiff's argument on this point lacks merit.   In this regard, it is evident that Plaintiff's contrary argument incorrectly assumes that the ALJ was somehow obligated to accept his unsupported testimony regarding his alleged inability to use his hands due to neuropathy.   Rather, the law is that,

> [w]hen determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted).   Here, the ALJ expressly acknowledged Plaintiff's claim that he is limited in using his hands due to neuropathy, but found, as the ALJ was entitled to do, that Plaintiff's subjective complaints in that regard were not supported by the record. *See, Burnette v. Colvin*, 564 F. App'x 605, 609 (2d Cir. 2014) ("Here, the ALJ found inconsistencies between Burnette's statements and the evidence. As discussed, the evidence suggested that Burnette only suffered mild or moderate physical and mental health problems, in contrast to her claims of more intense and persistent problems. Thus, the ALJ acted well within his discretion in concluding that Burnette was less than credible on at least some of her claims."); *see also, Rusin v. Berryhill*, 726 F. App'x 837, 840 (2d Cir. 2018) ("Importantly, it is the function of the Commissioner, not the reviewing court, to 'appraise the credibility of witnesses, including the claimant.' *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).").

For example, in explaining why the ALJ did not find Plaintiff's statements about his

alleged neuropathy credible, the ALJ stated:

> The claimant testified that he gets shortness of breath, but the evidence of record really did not reflect ongoing problems with the same and he is not on oxygen anymore.   The same is true for the claimant's alleged neuropathy with the record not showing this [to be] continued and severe. I note that Dr. Hashmi stated the claimant experiences shortness of breath and neuropathy as a side effect from chemotherapy.   However, there were no findings showing the same were severe.   The evidence as a whole substantiated that the claimant did not have severe shortness of breath and neuropathy.
>
>         \*\*\*
>
> He engages in a relatively wide range of daily activities as outlined herein, which establishes that the claimant has greater functioning than he professes.
>
>         \*\*\*
>
> The claimant said that he has neuropathy in the hands and feet.   The claimant asserted that his fine motor skills are affected given that he cannot just pick up one thing up [sic] and that he has to scoop objects up several at a time.   The claimant explained that buttoning small buttons [is] too hard and that he has trouble tying his shoes.   The claimant testified that the neuropathy stays in the hands right now[.]
>
>         \*\*\*
>
> [T]he claimant's statements about the intensity, persistence, and limiting effects of his symptoms are inconsistent [with regard to his alleged shortness of breath.]   The same is true of his assertions of neuropathy given the record does not reflect neuropathy really in the record.
>
>         \*\*\*
>
> On September 23, 2021, Dr. Liu documented that the claimant . . . had no sensory deficits, no atrophy, intact deep tendon reflexes, intact bilateral hand and finger dexterity and full bilateral grip strength.

Tr. 22-28.

Although Plaintiff claims that the ALJ failed to "address how Plaintiff's neuropathy would affect his ability to perform his past relevant work as a police lieutenant and police captain," ECF No. 6-1 at p. 1, that assertion is incorrect, since the ALJ specifically

addressed this point in the ALJ's discussion concerning Plaintiff's ability to perform that past work, observing that, "The claimant's complaints of pain, symptoms, fatigue, neuropathy, etc., simply are not consistent with the evidence of record and his rather wide range of daily activities." Tr. 32.   The ALJ's well-supported finding that Plaintiff's complaints about his hand neuropathy was not credible adequately explains how the ALJ was able to conclude that Plaintiff could perform his past work as a police lieutenant and police captain, notwithstanding Plaintiff's claimed inability to fire a gun due to neuropathy.

In sum, the Court finds that the ALJ properly exercised discretion, in accordance with the applicable regulations, to find that Plaintiff's testimony concerning the severity of his neuropathy was not credible, which in turn supported the ALJ's finding that Plaintiff could perform his past work.   Additionally, the Court finds that the ALJ's determinations on these points is supported by substantial evidence, since Plaintiff has not shown that a reasonable factfinder would have to find that Plaintiff's ability to use his hands was more restricted than what the ALJ found, or that Plaintiff would be unable to perform his past work due to neuropathy. *See, Watson v. Berryhill*, 732 F. App'x 48, 52 (2d Cir. 2018) ("We defer to an ALJ's decision to discredit subjective complaints if the decision is supported by substantial evidence. *Aponte v. Sec'y, Dep't of HHS*, 728 F.2d 588, 591 (2d Cir. 1984).").

CONCLUSION

For the reasons discussed above, Plaintiff's motion (ECF No. 6) for judgment on the pleadings is denied, Defendant's cross-motion (ECF No. 7) for the same relief is

granted, and this action is dismissed.   The Clerk is directed to enter judgment for Defendant and to close this action.

So Ordered.

Dated: Rochester, New York
          September 4, 2024

ENTER:

CHARLES J. SIRAGUSA
United States District Judge